## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CRYSTAL LOWE,
an individual,

        Plaintiff,

v.

CITY OF DETROIT,
a Michigan municipal corporation,

        Defendant.

Case No. 2:21-cv-10709

Honorable Bernard A. Friedman
Magistrate Judge Curtis Ivy

## DEFENDANT CITY OF DETROIT'S ANSWER
## AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant City of Detroit (the "City") answers Plaintiff Crystal Lowe's complaint as follows:

### INTRODUCTION

1.    Plaintiff Crystal Lowe is 33 years old and has lived in the metro Detroit area almost her entire life. She has significant experience in the cannabis industry and she wants to own and operate an adult-use marijuana retail store in her hometown of Detroit. But Defendant has almost certainly denied Plaintiff the opportunity to compete for an adult-use retail establishment license because Defendant's unconstitutional licensing scheme unfairly favors certain Detroit

1

residents over other Michiganders based on the duration of their residency in the city.

**ANSWER**: The City denies that its licensing scheme for adult-use retailer establishments is unconstitutional. The City further denies that it has denied Plaintiff an opportunity to compete for an adult-use retailer establishment license because there is no barrier to Plaintiff submitting an application for an adult-use retailer establishment license for the City's review. The City began accepting applications from all applicants on April 1, 2021; the application process is described at www.detroitmeansbusiness.org/homegrown. The City lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1, which has the effect of a denial.

### The Parties

2.      Plaintiff Crystal Lowe is a longtime Detroit resident who seeks to open an adult-use retail establishment in Detroit.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 2, which has the effect of a denial.

3.      Defendant City of Detroit is a Michigan municipal corporation located in Wayne County.

**ANSWER**: The City admits the allegation in Paragraph 3.

**Jurisdiction and Venue**

3. [sic]     This is an action for a permanent injunction and a declaratory judgment under MCR 2.605. This Court has jurisdiction because this is a civil action, no other court has exclusive jurisdiction over this action, and no law denies the circuit court's jurisdiction over this action. Jurisdiction is also proper under MCL 600.605 because Plaintiff seeks equitable remedies.

**ANSWER**: The City denies that Wayne County Circuit Court has exclusive jurisdiction over this action. In further answer, because this action presents a claim under the United States Constitution, the federal district courts have original jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367. The remaining allegations state conclusions of law to which no response is required. To the extent a response is required, the City denies the allegations based on its removal of this action under 28 U.S.C. § 1441.

4.     Venue in this county is proper under MCL 600.1615 because the Defendant is a municipality located within the county.

**ANSWER**: The City admits that it is a municipality located in Wayne County. The remainder of the allegation states a legal conclusion to which no response is required. To the extent a response is required, the City denies the allegation based on its removal of this action pursuant to 28 U.S.C. § 1441.

## **Background and Common Allegations**

5.      Plaintiff currently lives in the City of Detroit, and has lived in Detroit for approximately 11 out of the past 30 years.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 5, which has the effect of a denial.

6.      Plaintiff lived just outside of the Detroit city lines, in River Rouge, Michigan, for approximately 2 out of the past 30 years.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 6, which has the effect of a denial.

7.      Plaintiff lived outside of Michigan for approximately 6 out of the past 30 years. Specifically, she lived in Georgia for approximately four years during elementary/middle school, and, when she was about 20 years old, she lived in the State of Washington for approximately 2 years, while her then-husband was stationed there for military duty.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 7, which has the effect of a denial.

8.      Plaintiff has worked in Michigan's marijuana industry since 2012.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 8, which has the effect of a denial.

9.     Plaintiff wants to own and operate an adult-use marijuana retail store in Detroit.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 9, which has the effect of a denial.

10.    Until recently, Defendant City of Detroit had prohibited adult-use marijuana businesses in the city. Starting in April 2021, however, Defendant plans to begin accepting applications for a limited number of licenses to operate adult-use retail establishments.

**ANSWER**:  The City admits that it amended Chapter 20 of the 2019 Detroit City Code, *Health*, Article VI, Medical Marijuana Facilities and Adult-Use Marijuana Establishments (the "Ordinance") to permit adult-use retailer establishments. A copy of the Ordinance is attached as Exhibit 1. Under Section 20-6-35(c) of the Ordinance, the City began accepting applications for adult-use retailer establishment licenses on April 1, 2021. The City further admits that under Section 20-6-34 of the Ordinance, the City will issue 75 licenses to operate adult-use marijuana retailer establishments.

11.    Plaintiff plans to apply and compete for an adult-use retail establishment license.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 11, which has the effect of a denial.

12. Defendant, however, has almost certainly denied Plaintiff the opportunity to compete for an adult-use retail establishment license because Defendant's licensing scheme favors certain Detroit residents over other Michiganders based on the duration of their residency in the city.

**ANSWER**: The City denies the allegations as untrue. Its licensing scheme does not favor Detroit residency per se. The Ordinance provides those Detroiters who have undoubtedly experienced the deleterious effects of the war on drugs an opportunity to compete on equal footing with others who are applying for adult-use retailer establishment licenses.

13. As explained below, this licensing scheme violates Michigan's Constitution in multiple ways. It also violates the United States Constitution.

**ANSWER**: The City denies the allegations contained in Paragraph 13 because the City's licensing scheme does not violate the Michigan Constitution or the United States Constitution.

### Detroit Initially Opts Out of Adult-Use Marijuana Before Creating a Licensing Scheme

14. In November 2018, Michigan voters passed the Michigan Regulation and Taxation of Marihuana Act, or MRTMA, for short. This voter-initiated law establishes a system to license and regulate businesses that grow, process, and sell adult-use marihuana.

**ANSWER**: Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that MRMTA was approved by the voters in November 2018 and that the terms of MRTMA speak for themselves.

15. Under MRTMA, recreational marijuana is legal in municipality unless it affirmatively enacts an ordinance to "completely prohibit or limit the number of marihuana establishments within its boundaries." MCL 333.27956(1).

**ANSWER**: Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that MCL 333.27956(1) states that "a municipality may completely prohibit or limit the number of marihuana establishments within its boundaries[,]" and that the terms of MCL 333.27956(1) speak for themselves.

16. A municipality may "adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license... ." MCL 333.27956(3).

**ANSWER**: Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that MCL 333.27956(3) states that "[a] municipality may adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain

a municipal license[,]" and that the terms of MCL 333.27956(3) speak for themselves.

17.    If a municipality chooses to implement a licensing system, it "may not impose qualifications for licensure that conflict with this act or rules promulgated by the [Marijuana Regulatory Agency]." *Id*.

**ANSWER**: Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that MCL 333.27956(3) states that a municipality "may not impose qualifications for licensure that conflict with this act or rules promulgated by the department[,]" and that the terms of MCL 333.27956(3) speak for themselves.

18.    If a municipality "limits the number of marihuana establishments that may be licensed in the municipality . . . and that limit prevents the [Marijuana Regulatory Agency] from issuing a state license to all applicants who [are otherwise qualified to receive a state license], the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality." MCL 333.27959(4).

**ANSWER**: Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that MCL 333.27959(4) states that "[i]f a municipality limits the number of marihuana

establishments that may be licensed in the municipality pursuant to section 6 of this act and that limit prevents the department from issuing a state license to all applicants who meet the requirements of subsection 3 of this section, the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality[,]" and that the terms of MCL 333.27959(4) speak for themselves.

19.    After MRTMA became law, Defendant initially opted out of allowing adult-use establishments in the city.

**ANSWER**: The City admits that after MRTMA became effective, the City opted out of allowing adult-use retailer establishments in the city.

20.    In November 2020, the Detroit City Council decided to opt back into allowing such businesses and passed the Medical Marijuana Facilities and Adult-Use Marijuana Establishments ordinance ("the Ordinance").

**ANSWER**: The City admits only that the Detroit City Council passed the Ordinance, effective January 1, 2021, which allows the operation of adult-use retailer establishments subject to the City's social equity-related provisions, including its legacy applicant provisions. To the extent the allegations in Paragraph 20 suggest otherwise, the City denies the allegations in Paragraph 20. Further, the City amended the Ordinance effective March 31, 2021; the amendments to the Ordinance are attached as Exhibit 2.

9

21.    Because Defendant has decided to cap the number of licenses available for adult-use retail establishments, it has set up a competitive licensing scheme.

**ANSWER**: The City admits only that Section 20-6-34 of the Ordinance limits the number of licenses for adult-use retailer establishments to 75. The City further admits that a competitive licensing scheme is provided under Section 20-6-35 of the Ordinance as amended.

22.    The Ordinance creates a discriminatory licensing scheme that, upon information and belief, is unlike any other in the State.

**ANSWER**: The City denies that the Ordinance creates a discriminatory licensing scheme. The City lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, which has the effect of a denial.

### Defendant's Discriminatory Licensing Scheme

23.    Defendant's licensing scheme revolves around the concept of "Detroit legacy" status, which the Defendant uses to discriminate against all nonresidents and even many longtime Detroit residents like Plaintiff.

**ANSWER**: The City admits that its Ordinance contains provisions addressing legacy applicants but denies that its Ordinance or the provisions addressing legacy applicants is discriminatory or otherwise violates the law.

24.    Under the Ordinance, a "Detroit legacy applicant or licensee" is defined to mean an individual who has, or an entity that is at least 51% owned and controlled

10

by one or more individuals who has been a City of Detroit resident at the time of application for at least one year, and additionally has been:

    a.    a City of Detroit resident for 15 of the past 30 years preceding the date of application and continues to so reside throughout the period of licensure; or

    b.    a City of Detroit resident for 13 of the past 30 years preceding the date of application, and continues to so reside throughout the period of licensure, and is a low income applicant at the time of application, as defined in this Section; or

    c.    a City of Detroit resident for the [sic] 10 of the past 30 years preceding the date of application, and continues to so reside throughout the period of licensure, and has a prior controlled substance record, as defined in this section, or a parent with a prior controlled substance record as defined in this section under the following circumstances:

        (i)    the parent is named on the applicant's birth certificate, and the parent's conviction took place before the applicant's 18th birthday; or

        (ii)    the parent has claimed the applicant as a dependent regularly on federal income tax filings, and the parent's conviction took place before the applicant's 18th birthday.

    **<u>ANSWER</u>**: Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits Section 20-6-2 of the Ordinance defines "Detroit legacy applicant or licensee" but denies that Paragraph 24 accurately restates the definition. The definition of "Detroit legacy applicant or licensee" was amended effective March 31, 2021. The text of the amendment is attached as part of Exhibit 2, which speaks for itself.

25.     The Ordinance sets up a system that almost certainly guarantees that in practice only Detroit legacy applicants will receive the adult-use retail establishment licenses.

**ANSWER**:  The City denies the allegations contained in Paragraph 25.

26.     The Ordinance provides for a maximum of 75 adult-use retail establishment licenses.

**ANSWER**:  Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that Section 20-6-34 of the Ordinance caps the number of adult-use retailer establishment licenses at 75, and that the provisions of the Ordinance speak for themselves.

27.     It provides that no less than 50% of the 75 available licenses for adult-use retail establishments shall be granted to Detroit legacy applicants. Critically, though, there is no cap on the number of licenses that will be awarded to Detroit legacy applicants.

**ANSWER**:  Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City denies that Paragraph 27 accurately restates Section 20-6-31 of the Ordinance. Section 20-6-31 was amended effective March 31, 2021; the text of the amendment is attached as part of Exhibit 2, which speaks for itself.

28.     It further provides that [sic] City shall not issue a license for an adult-use retail establishment if such issuance would cause the number of licenses held by Detroit legacy licensees to be less than 50% of the total licenses for this category.

**ANSWER**:  Because this allegation is not directed to the City, no response is required. To the extent a response is required, the City admits that Section 20-6-31(e) of the Ordinance states that the City shall not issue an adult-use retailer establishment license "if such issuance would cause the number of licenses held by Detroit legacy licenses to be less than 50% of the total licenses held[,]" and that the provisions of the Ordinance speak for themselves.

29.     Thus, Detroit legacy applicants can compete for 75 licenses, whereas applicants without Detroit legacy status can only compete for a potential maximum of 37 licenses, a number that will shrink depending on how many Detroit legacy applicants succeed in obtaining licenses.

**ANSWER**:  The City denies the allegations in Paragraph 29.

30.     It seems almost certain that Detroit legacy applicants will greatly outnumber the total maximum licenses available.

**ANSWER**: The City admits that the number of applications received from both legacy and non-legacy applicants may exceed the number of licenses provided for by the Ordinance, but to the extent that the allegations in Paragraph 30 imply that

there is something unlawful about the number of applicants or licenses available, the City denies the same.

31. Given how Defendant has staggered its review process, this almost certainly means that applicants without Detroit legacy status will not receive adult-use retail establishment licenses.

**ANSWER**: The City denies the allegations in Paragraph 31.

32. From April 1, 2021, until April 30, 2021, Defendant will accept applications for adult-use marijuana establishment licenses from all applicants.

**ANSWER**: The City admits only that the Ordinance states that "the City will begin accepting applications for adult-use marijuana establishment licenses on April 1, 2021, and shall review eligible license applications submitted by April 30, 2021 within the time periods set forth [in this provision]." The Ordinance also states that "the City may postpone or modify the timelines set forth in this section for reviewing applications to alternate dates out of administrative necessity, and shall inform the public forthwith." The City denies the remaining allegations in Paragraph 32.

33. From May 1, 2021 through June 15, 2021, Defendant will only review and approve applications from Detroit legacy applicants.

**ANSWER**: The City admits only that the Ordinance states that "[f]rom May 1, 2021 through June 15, 2021 there will be a reserved review period wherein the City will review and may approve applications for adult-use marijuana establishment

licenses from Detroit legacy applicants." The Ordinance also states that "the City may postpone or modify the timelines set forth in this section for reviewing applications to alternate dates out of administrative necessity, and shall inform the public forthwith." To the extent that the allegations in Paragraph 33 imply that these are the only applications being reviewed during this period of time or that these applications will be approved during this period of time, the City denies the same.

34.    From June 16, 2021 through July 31, 2021, if there are any remaining licenses, Defendant will consider applications from non-Detroit legacy applicants that already have a state operating license for a medical marijuana facility in Detroit.

**ANSWER**:  The City admits only that the Ordinance states that "[f]rom June 16, 2021 through July 31, 2021, there will be a reserved review period wherein the City will review and may approve applications for adult-use marijuana establishment licenses, from holders of a state operating license for a medical marijuana facility in the City of Detroit." The Ordinance also states that "the City may postpone or modify the timelines set forth in this section for reviewing applications to alternate dates out of administrative necessity, and shall inform the public forthwith." The City denies the remaining allegations in Paragraph 34.

35.    After July 31, 2021, if there are any remaining licenses, Defendant will consider applications from any other applicants who do not qualify for the two "reserved review period[s]" described above.

**ANSWER**:  The City admits only that the Ordinance states that "[b]eginning August 1, 2021, and continuing thereafter, the City will review applications in order of submission and may approve applications for adult-use marijuana establishment licenses from any applicant."  The Ordinance also states that "the City may postpone or modify the timelines set forth in this section for reviewing applications to alternate dates out of administrative necessity, and shall inform the public forthwith." The City denies the remaining allegations in paragraph 35.

36.     Upon information and belief, it seems almost certain that Defendant will award all 75 adult-use retailer establishment licenses to Detroit legacy applicants before it even considers any non-legacy applicants.

**ANSWER**:  The City denies the allegations in Paragraph 36.

37.     This creates a significant and long-lasting hurdle preventing non-Detroit legacy applicants from obtaining a license because when a business is owned by a Detroit legacy applicant and licensed under the Ordinance, it cannot be transferred, sold, or conveyed to anyone other than another Detroit legacy applicant for a period of five years from the date the initial license is granted or else the business will lose its Detroit legacy status and must re-apply and be approved for a license as a general applicant before operating.

**ANSWER**: The City denies that the alleged limits imposed on license transferred imposed by its Ordinance creates a significant or long-lasting hurdle to

non-Detroit legacy applicants from obtaining a license. Because the remaining allegations in Paragraph 37 paraphrase the Ordinance, no response is required. To the extent a response is required, the provisions of the Ordinance speak for themselves.

### Plaintiff Cannot Qualify as a Detroit Legacy Applicant

38.     Despite being a longtime Detroit resident, Plaintiff does not qualify as a Detroit legacy applicant.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 38, which has the effect of a denial.

39.     Plaintiff has lived in Detroit for approximately 11 of the past 30 years.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 39, which has the effect of a denial.

40.     A resident who has lived in Detroit for 11 of the past 30 years can only qualify for Detroit legacy status if they have "a prior controlled substance record" or "a parent with a prior controlled substance record" under certain circumstances. Plaintiff does not satisfy these requirements.

**ANSWER**: The provisions of the Ordinance speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 40 regarding those applicants who satisfy the definition of "Detroit legacy applicant" under the Ordinance. The City lacks knowledge sufficient to form a belief as to the truth of the

remaining allegations.

41.    The Ordinance thus treats Plaintiff differently from Detroit residents of the same duration who have, or whose parents have, a prior controlled substance record.

**ANSWER**: The provisions of the Ordinance speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 41 as to the Ordinance's effect, which has the effect of a denial.

42.    The Ordinance also treats Plaintiff differently from Detroit residents who have lived in Detroit for 13 of the past 30 years and have a low income.

**ANSWER**: The provisions of the Ordinance speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 42 as to the Ordinance's effect, which has the effect of a denial.

43.    The Ordinance further treats Plaintiff differently from Detroit residents who have lived in Detroit for 15 of the past 30 years, irrespective of income or prior controlled substance record.

**ANSWER**: The provisions of the Ordinance speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 43 as to the Ordinance's effect, which has the effect of a denial.

44.     If the Ordinance counted towards Detroit legacy status the years Plaintiff lived just outside the city's lines, in River Rouge, Plaintiff would qualify as a Detroit legacy applicant.

**ANSWER**:  The allegations in Paragraph 44 pose a hypothetical that assumes a change to the text of the Ordinance and thus are not allegations directed to the City and not allegations to which the City must respond.

45.     The Ordinance thus treats Plaintiff differently than other Detroit residents based on her residency in River Rouge.

**ANSWER**:   The provisions of the Ordinance speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 45 as to the Ordinance's effect, which has the effect of a denial.

46.     If the Ordinance counted towards Detroit legacy status the years Plaintiff lived out-of-state, Plaintiff would qualify as a Detroit legacy applicant.

**ANSWER**:  The allegations in Paragraph 46 pose a hypothetical that assumes a change to the text of the Ordinance and thus are not allegations directed to the City and not allegations to which the City must respond.

47.     The Ordinance thus treats Plaintiff differently than other Detroit residents based on her out-of-state residency.

**ANSWER**:  The provisions of the Ordinance speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 47 as to the Ordinance's effect, which has the effect of a denial.

48.     Because Plaintiff cannot qualify as a Detroit legacy applicant, she will almost certainly not even have a chance to obtain an adult-use retail establishment license.

**ANSWER**:  The City denies the allegations in Paragraph 48.

49.     At a minimum, the scheme significantly reduces the number of adult-use retail establishment licenses for which she can compete.

**ANSWER**:  The City denies the allegations in Paragraph 49.

**Defendant's Licensing Scheme Violates the Michigan Constitution**

50.     The Michigan Constitution provides that "All political power is inherent in the people. Government is instituted for their equal benefit, security and protection." Const 1963, art 1, § 1.

**ANSWER**: The provisions of the Michigan Constitution speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 50.

51.     It further guarantees that "No person shall be denied the equal protection of the laws. . . ." Const 1963, art 1, § 2.

**ANSWER**: The provisions of the Michigan Constitution speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 51.

52.     The Michigan Constitution also provides that "No person shall be . . . deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17.

**ANSWER**: The provisions of the Michigan Constitution speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 52.

53.     These provisions guarantee, among other things, a right to intrastate travel, a right to interstate travel, a right to pursue one's livelihood, and right to be free from arbitrary or impermissible discrimination.

**ANSWER**: The provisions of the Michigan Constitution speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 53.

54.     The Ordinance violates these provisions because its preferences for Detroit legacy applicants in awarding adult-use retail establishment licenses punish Plaintiff for exercising her rights to intrastate and interstate travel, violate her right to pursue her livelihood, and draw distinctions between her and other Detroit residents that are not rationally related to any legitimate government purpose.

**ANSWER**:  The City denies the allegations in Paragraph 54.

**Defendant's Licensing Scheme Violates the United States Constitution**

55.     The United States Constitution empowers the federal Congress "To regulate Commerce . . . among the several States." US Const, art I, § 8, cl 3.

**ANSWER**: The provisions of the United States Constitution speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 55.

56.     The United States Supreme Court has "long held' that this Clause also prohibits state and municipal laws that unduly restrict interstate commerce. *Tenn Wine & Spirits Retailers Ass'n v Thomas*, 139 S Ct 2449, 2459 (2019); see also *Dean Milk Co v. City of Madison*, 340 US 349, 354 & n4 (1951).

**ANSWER**: The Supreme Court's analysis in *Tennessee Wine & Spirits Retailers Association v Thomas*, 139 S. Ct. 2449, 2459 (2019) and *Dean Milk Co v. City of Madison*, 340 U.S. 349, 354 & n.4 (1951) speaks for itself. To the extent the allegations in Paragraph 56 imply that the Ordinance violates the Dormant Commerce Clause, the City denies the same.

57.     A law that discriminates against interstate commerce is "virtually *per se* invalid, and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." See *Dep't of Revenue of Ky v. Davis,* 553 U.S. 328, 338 (2008) (internal quotation marks and

citations omitted).

**ANSWER**: The Supreme Court's analysis in *Department of Revenue of Kentucky v. Davis,* 553 U.S. 328, 338 (2008) speaks for itself.  To the extent the allegations in Paragraph 57 imply that the Ordinance discriminates against interstate commerce, the City denies the same.

58.     The Ordinance violates the Commerce Clause because it discriminates against out-of-state residents and punishes people for moving between states. Its preferences for Detroit legacy applicants do not advance a legitimate local purpose—and, even to the extent they do, that interest could be adequately served by reasonable nondiscriminatory alternatives.

**ANSWER**:  The City denies the allegations in Paragraph 58

### COUNT I
### (Declaratory Judgment and Injunctive Relief)

59.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER**: The City reincorporates by reference its answers to Paragraphs 1-58 as if fully set forth herein.

60.     Under MCR 2.605, in "a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

**ANSWER**: The terms of Michigan Court Rule 2.605 speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 50.

61.    There is an actual case or controversy here because Plaintiff contends that the process utilized to award the licenses to operate adult-use retailer establishment licenses violates the Equal Protection and Due Process Clauses of the Michigan Constitution.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of whether Plaintiff's allegations form the basis of an actual case or controversy and therefore, denies the same. The City denies the remaining allegations in Paragraph 61.

**COUNT II**
**(Declaratory Judgment and Injunctive Relief)**

62.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

**ANSWER**: The City reincorporates by reference its answers to Paragraphs 1-62 as if fully set forth herein.

63.    Under MCR 2.605, in "a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

**ANSWER**: The provisions of Michigan Court Rule 2.605 speak for themselves and thus, the City neither admits nor denies the allegations in Paragraph 63.

64.     There is an actual case or controversy here because Plaintiff contends that the process utilized to award the licenses to operate adult-use retailer establishment licenses violates the Commerce Clause of the United States Constitution.

**ANSWER**: The City lacks knowledge sufficient to form a belief as to the truth of whether Plaintiff's allegations form the basis of an actual case or controversy and therefore, denies the same. The City denies the remaining allegations in Paragraph 64.

## CITY OF DETROIT'S AFFIRMATIVE AND OTHER DEFENSES TO COMPLAINT

Defendant City of Detroit may assert the following affirmative and other defenses at trial, if supported by the facts as uncovered through discovery.

A.     Plaintiff's complaint fails to state a claim upon which relief may be granted.

B.     The City's Ordinance does not violate the United States Constitution, including the Commerce Clause.

C.     The City's Ordinance does not violate the Michigan Constitution, including the Equal Protection Clause and the Due Process Clause.

WHEREFORE, the Defendant City of Detroit respectfully requests that this Court dismiss Plaintiff's claim in its entirety with prejudice and award the City its costs and attorneys' fees.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK
  AND STONE, P.L.C.

By: */s/ Emily C. Palacios*
        Sonal H. Mithani (P51984)
        Emily C. Palacios (P64941)
        101 N. Main Street, 7th Floor
        Ann Arbor, MI 48104
        (734) 668.7784
        mithani@millercanfield.com
        palacios@millercanfield.com
        *Attorneys for Defendant City of Detroit*

Dated: April 6, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2021, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF filers of record.

By: */s/ Emily C. Palacios*
     Emily C. Palacios (P64941)